1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  FRANCESCA GONZALES, et al.        )   Case No. 13cv1029-BEN (BLM)
                                      )
12              Plaintiffs,           )   **SUPPLEMENTAL ORDER DENYING**
                                      )   **DEFENDANT'S MOTION FOR A**
13  v.                                )   **PROTECTIVE ORDER**
                                      )
14                                    )   [ECF No. 28]
                                      )
15  T-MOBILE, USA, Inc., et al.       )
                                      )
16              Defendants.           )
                                      )
17                                    )
                                      )
18  _____ )

19          On June 23, 2014, the counsel for all parties jointly contacted the Court regarding

20  a  discovery  dispute,  for  which  the  Court  set  a  briefing  schedule.   ECF  No. 27.   In

21  accordance  with  the  Court's  Order,  Defendant  T-Mobile  USA,  Inc.  ("Defendant"  or  "T-

22  Mobile")  filed a motion for a protective order on June 24, 2014.  ECF No. 28.  Plaintiffs

23  timely filed an opposition on June 27, 2014.  ECF No. 29.  Defendant filed a reply in support

24  of its motion for a protective order on July 2, 2014.  ECF No. 32.

25          The parties advised the Court that a ruling on the motion was needed as soon as

26  possible since Plaintiffs' motion for class certification had to be filed by July 14, 2014.  ECF

27  Nos. 28-1 at 2; 29 at 5-6, 15-16.  To accommodate the parties' request, on July 3, 2014,

28  the Court issued an order denying Defendant's motion for a protective order and granting

in part Plaintiffs' motion to continue the class certification deadline.  ECF No. 33.  In the order, the Court stated that it was issuing the order to address the timing concerns of the parties and that it would issue a supplemental order providing additional analysis.  Id. at 4 n.1.  This order provides the supplemental analysis for the order denying Defendant's motion for a protective order.

## FACTUAL  BACKGROUND

Plaintiffs brought this class action suit on behalf of "[a]ll employees who worked for Defendants in California within four years prior to the filing of this complaint until the date of certification, and who earned and/or received commissions and/or bonuses and/or incentives as part of their regularly-scheduled compensation on service contracts, renewals and/or merchandise sales."  ECF No. 1-3 at 5.  Plaintiffs assert that T-Mobile's automated commission accounting system did not accurately reflect all commissions earned by the members of the purported class, resulting in a systemic underpayment of commissions and bonuses. Id. at 3-4.

Plaintiffs state that on October 14, 2013, they served discovery requests on Defendant which were "designed to find and detect alleged errors in T-Mobile's commissioning system."  ECF No. 29-2, Declaration of Janine R. Menhennet ("Menhennet Decl.") at 3.  Plaintiffs maintain that while their discovery requests were pending,[1] the parties jointly agreed in December 2013, "that staying the formal discovery requests made sense, while they pursued [a] smaller, narrower data request . . . ."  ECF No. 29 at 6; see also Menhennet Decl. at 3.  Defendant alleges that in December 2013 and January 2014, the parties entered into an agreement to stay general discovery (or written discovery) and to focus on discovery required for mediation.   See ECF No. 28-2, Declaration of Fred M. Plevin ("Plevin Decl.") at 2; ECF Nos. 28-1 at 2-3; 32 at 5-6, 8.  Defendant  further claims

---

[1] Plaintiffs assert that the "formal discovery" in this case consists of "Plaintiffs' Requests for Production of Documents, Set One, propounded September 3, 2013, and Plaintiffs' Special Interrogatories to Defendant, Set One, propounded October 14, 2013."  Menhennet Decl. at 3.  Defendant confirms that as of early December 2013, Plaintiffs "had a variety of pending discovery requests to T-Mobile . . . including document requests and special interrogatories."  ECF No. 28-2, Declaration of Fred M. Plevin at 2.

that in response to Plaintiffs' requests, and based upon the parties' agreements, it conducted specific computer searches, gathered, compiled, and produced to Plaintiffs relevant data. ECF Nos. 28-1 at 2-3; 32 at 2-3.

Citing delays in data production and analysis, the parties jointly moved the Court on three separate occasions (on November 8, 2013, January 31, 2014, and May 29, 2014) to continue expert disclosure and class certification filing deadlines. See ECF Nos. 16, 21 & 23. After granting the parties' first two motions and extending the deadlines by five months [ECF Nos. 17 & 22], the Court declined the parties' request to extend the class certification deadline for three more months [ECF Nos. 23 at 6; 22 at 2], and extended the deadline until July 14, 2014.[2] ECF Nos. 24 & 26. The new deadline for class certification was thus set before the parties' scheduled mediation date of July 31, 2014. ECF Nos. 26 at 3; 29 at 8. Plaintiffs subsequently advised Defendant's counsel about their intention to use some of the data produced by Defendant after January 14, 2014, to support their motion for class certification. ECF No. 28-1 at 4; Plevin Decl. at 4-5. Defendant asked Plaintiffs to "enter into a stipulated protective order prohibiting the use of any information produced by T-Mobile after January 14, 2014, for any purpose other than mediation." Id.; see also ECF No. 28-3 at 1. Plaintiffs did not agree to the proposed stipulation, and Defendant subsequently refused to produce the last set of data, which was scheduled to occur by June 13, 2014. See Plevin Decl. at 5; see also ECF Nos. 28 at 9 n.3; 29 at 16.

Defendant alleges that it "informally" provided data compilations in response to

---

[2] In reaching its decision, the Court stated the following:

After carefully considering the additional facts provided by counsel in support of the motion, the Court declines to continue the deadlines as requested by the parties. See ECF No. 23 at 6. As stated in this Court's June 5, 2014 order, the parties can proceed on two tracks and conduct discovery and prepare for mediation at the same time. See ECF No. 24 at 2. Nevertheless, because the last data production will be completed by June 13, 2014, and because Plaintiffs' experts will require two to three more weeks to review and prepare their reports, the Court finds good cause to continue the class certification filing deadline to July 14, 2014.

ECF No. 26 at 2-3 (footnote omitted).

Plaintiffs' January 14, 2014 letter[3] "for the sole, purpose of allowing [Plaintiffs] to prepare for mediation."  <u>See</u> ECF No. 28-1 at 2; <u>see also</u> Plevin Decl. at 3-4.  Defendant disputes Plaintiffs' characterization of the produced data as "raw data."  In support, Defendant alleges that it expended significant resources searching for, obtaining, and compiling the data,  asserts that it did so in order to accommodate mediation, and claims the documents it produced were not business records.  ECF Nos. 32 at 2-3, 8; 32-2. Defendant filed the instant motion requesting the Court to issue a protective order "precluding the use by Plaintiffs of any data produced by T-Mobile in response to Plaintiffs' counsel's letter of January 14, 2014, or any related requests, for any purpose other than mediation."  ECF No. 28 at 1; <u>see also</u> ECF Nos. 28-1 at 10; 32 at 8.

Plaintiffs reply that Defendant "is using mediation shield . . . to protect raw data pulled entirely from contemporaneous business records which existed prior to, and independent of, the mediation process."  ECF No. 29 at 8.  Plaintiffs acknowledge that they agreed with Defendant to limit the scope of the discovery requested in October 2013, in order to comply with the Court's discovery order suggesting that Plaintiffs identify "systematic errors" relevant to the allegations in this case.  <u>Id.</u> at 6-8; Markham Decl. at 3-4; Menhennet Decl. at 3.  Plaintiffs further assert that the disputed computer data "is raw data, subject to discovery" that was maintained as business records, and, as such, is not protected by the mediation privilege and could be used by Plaintiffs for class certification purposes.  ECF No. 29 at 8-11, 16.  Plaintiffs thus assert that Defendant's motion for a protective order should be denied.  <u>Id.</u> at 16.

---

[3] On January 14, 2014, Plaintiff's counsel, David R. Markham, sent a letter to Defendant's counsel, Fred Plevin, captioned "Confidential Settlement Communication." ECF Nos. 28-3 at 6; 31 at 7. The copy of the letter provided to the Court has been significantly redacted by the parties, and thus the Court turns to the parties' affidavits describing the content of the letter.  <u>See</u> ECF Nos. 38-3 at 6-11; 31 at 7.  Defendant asserts that in the letter, Plaintiffs' counsel expressed his willingness "to further . . . conversations on the subject of settlement," and requested Defendant's production of "customer transaction and commission data for transactions for specific products that did, and did not, result in a paid commission."  Plevin Decl. at 2-3. Plaintiffs' counsel claims that in the letter, he "(1) agreed to mediation, but (2) identified the types of (non)commissioned transactions which appeared to occur systematically and (3) requested all underlying data which T-Mobile had on them."  Markham Decl. at 3; <u>see also</u> ECF No. 31 at 7 (containing Plaintiffs' counsel's statement that "it is important that we have all digitally stored information on the subject accounts regardless of date").

## LEGAL STANDARD

The Federal Rules of Civil Procedure generally allow for broad discovery, authorizing parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Also, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Id. Relevant information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence," and need not be admissible at trial to be discoverable. Id. There is no requirement that the information sought directly relate to a particular issue in the case. Rather, relevance encompasses any matter that "bears on" or could reasonably lead to matter that could bear on, any issue that is or may be presented in the case. Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). Similarly, district courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(c). Limits should be imposed where the burden or expense outweighs the likely benefits. Id.

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Id. at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1).

Upon a showing of good cause, the Court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1210–11 (9th Cir. 2002), citing Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations

of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); see also Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) (Under liberal discovery principles of the federal rules, those opposing discovery are required to carry a heavy burden of showing why discovery should be denied).  The court has wide discretion to determine what constitutes a showing of good cause and to fashion a protective order that provides the appropriate degree of protection.  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

State law privilege rules apply in a federal proceeding based on diversity.  See Fed. R. Evid. 501; In re California Pub. Utilities Com'n, 892 F.2d 778, 781 (9th Cir. 1989) ("In diversity actions, questions of privilege are controlled by state law.").  In California, the mediation privilege is established by statute.  See Cal. Evid. Code §§ 1115-1128.  California Evidence Code § 1119(b) provides that "[n]o writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation . . . is admissible or subject to discovery, and disclosure of the writing shall not be compelled . . . ." Cal. Evid. Code 1119(b).  A "writing" is defined to include "every other means of recording upon any tangible thing, any form of communication or representation, including letters, words, pictures, sounds, or symbols, or combinations thereof, and any record thereby created, regardless of the manner in which the record has been stored." Cal. Evid. Code § 250; see also Rojas v. Superior Court, 33 Cal.4th 407, 416-17 (2004) (California's mediation privilege for "writings" extends to analyses of raw data results, prepared for, in the course of, or pursuant to, a mediation).  However, "[e]vidence otherwise admissible or subject to discovery outside of a mediation . . . shall not be or become inadmissible or protected from disclosure solely by reason of its introduction or use in a mediation . . . ." Cal. Evid. Code § 1120(a).

## DISCUSSION

Defendant asserts that all of the data and documents it produced after January 14, 2014, are protected by the mediation privilege under California Evidence Code § 1119(b) and asks the Court to prevent Plaintiffs from using or disclosing the challenged data for any

purpose other than mediation. ECF Nos. 32 at 3-4, 8; 28 at 1; 28-1 at 5-6, 10. Defendant claims that the produced spreadsheets containing data "only exist" because Plaintiffs requested Defendant to "locate, compile and customize sets of data for the upcoming mediation." ECF No. 32 at 2-3. In support, Defendant provides the declaration of Jerry Beharry, an Application Support Analyst for the Billing Operations Department at T-Mobile. See ECF 32-2, Declaration of Jerry Beharry ("Beharry Decl.") at 1-3. Mr. Beharry maintains that he pulled the disputed data from five separate tables in T-Mobile's internal computer system based on the subscriber numbers provided by Plaintiffs. Id. at 2. Mr. Beharry describes the process of data extraction as follows: "I had to create queries for each separate category of information. I prepared similar queries for the other categories of information. . . . [W]hen I finished the queries, I compiled, formatted and exported the data into an excel spreadsheet." Id. Defendant argues that because the spreadsheets containing the requested data were created after a lengthy and time-consuming process, they are not business records kept in the company's normal course of business operations. Id.; ECF No. 32 at 2. Defendant relies on California Evidence Code 1119(b), the California Supreme Court's decision in Rojas, and public policy supporting mediation and confidentiality agreements in asserting that the challenged data is entitled to statutory protection. ECF Nos. 32 at 3-5, 8; 28 at 1; 28-1 at 5-6, 10; see also Rojas, 33 Cal.4th at 407. Defendant thus asserts that the Court should grant its motion for a protective order. ECF Nos. 28 at 1; 28-1 at 10; 32 at 8.

Plaintiffs counter that the challenged data is "raw data in the form of a contemporaneous business record, existing independently of the mediation process," that the data was otherwise discoverable, Defendant had agreed to produce the data before mediation discussions began, and that Plaintiffs would be irreparably harmed if they are prevented from using Defendant's raw data. ECF No. 29 at 8-15. Plaintiffs assert that the "raw lines of data" in the form of a contemporaneous business record existed "independently of the mediation process" and "well before the present litigation commenced." Id. at 8, 11. In support, Plaintiffs explain that Defendant's records at issue in this case were prepared to

1  bill T-Mobile's customers and to pay its employees based on those transactions. <u>Id.</u> at 8-9.
2  Plaintiffs further argue that the fact that they requested a portion of Defendant's business
3  records did not make the records "prepared for" or "compiled for" the purpose of mediation,
4  because the records existed independently of and before the mediation was proposed in
5  October 2013. <u>Id.</u> at 8.  As such, Plaintiffs assert that the data does not contain "opinions,
6  admissions, analyses, or reports," was not "prepared for the purpose of, in the course of,
7  or pursuant to, a mediation," and thus is not protected by the mediation privilege. <u>Id.</u> at 8-
8  9.  Plaintiffs therefore ask the Court to deny Defendant's motion for a protective order. <u>Id.</u>
9  at 16.

10  **1. <u>Application of California Privilege Law</u>**

11  Because this action is brought to federal court under diversity jurisdiction, the Court
12  is required to apply California privilege laws. <u>See</u> ECF No. 1; Fed. R. Evid. 501; <u>In re</u>
13  <u>California Pub. Utilities Com'n</u>, 892 F.2d at 781.  The spreadsheets produced by Defendant
14  with the requested data extracted from its internal computer system, qualify as a "writing."
15  <u>See</u> Cal. Evid. Code § 250 (providing that a "writing" is defined to include "every other
16  means of recording upon any tangible thing, any form of communication or representation,
17  including letters, words, pictures, sounds, or symbols, or combinations thereof, and any
18  record thereby created, regardless of the manner in which the record has been stored.");
19  <u>see also</u> <u>Rojas</u>, 33 Cal.4th at 416-17.

20  Defendant relies on California Evidence Code § 1119(b) and <u>Rojas,</u> and asserts that
21  the documents it produced after January 14, 2014, are protected by the mediation privilege,
22  because the spreadsheets containing the requested data were created after a lengthy and
23  time-consuming process for mediation purposes. ECF Nos. 32 at 3; 28-1 at 5-6, 10; <u>see also</u>
24  Cal. Evid. Code 1119(b) ("No writing, as defined in Section 250, that is prepared for the
25  purpose of, in the course of, or pursuant to, a mediation . . . is admissible or subject to
26  discovery, and disclosure of the writing shall not be compelled . . . ."); <u>Rojas</u>, 33 Cal.4th 407.
27  In <u>Rojas</u>, an owner of an apartment complex sued the contractors and subcontractors who
28  built the complex alleging certain construction defects that resulted in toxic molds on the

property.  <u>Rojas</u>, 33 Cal.4th at 411.  The parties mediated the dispute and reached a settlement.  <u>Id.</u> at 412.  After the settlement, the apartment complex tenants sued the owners and the builders of the complex alleging health problems caused by the toxic molds and sought discovery of the mediation materials.  <u>Id.</u>  Defendants argued that the items sought by the tenant-plaintiffs were protected by Cal. Evid. Code § 1119, because they were prepared for mediation in the underlying action.  <u>Id.</u>  The trial court sustained mediation-confidentiality objections to discovery, and the Court of Appeal reversed, holding that Cal. Evid. Code § 1119 did not protect the type of evidence sought by the tenants.  <u>Id.</u> at 413-15.  The California Supreme Court reversed and found that the Court of Appeal "erred in holding that photographs, videotapes, witness statements, and 'raw test data' from physical samples collected at the complex–such as reports describing the existence or amount of mold spores in a sample–that were 'prepared for the purpose of, in the course of, or pursuant to, [the] mediation' in the underlying action are not protected under section 1119."  <u>Id.</u> at 422-23.

The issue in this case is whether the computer data produced by Defendant after January 14, 2014, was prepared for the purpose of mediation.  Although the California Supreme Court in <u>Rojas</u> focused on the kinds of evidence protected by Cal. Evid. Code § 1119 and the scope of the exceptions to that protection, it did not address the standard for determining whether a piece of evidence was "prepared for the purpose of, in the course of, or pursuant to, a mediation."  <u>See</u> <u>Rojas</u>, 33 Cal.4th at 424 ("the Court of Appeal . . . sent the case back to the trial court without addressing Tenants' argument that many of the documents in question had not been 'prepared for the purpose of, in the course of, or pursuant to, a mediation.' (§ 1119, subd. (b).) We likewise express no opinion on this question."); <u>see also</u> <u>id.</u> at 415-24; Cal. Evid. Code § 1119(b).

The California Supreme Court in <u>Rojas</u> did, however, analyze Cal. Evid. Code § 1120(a), which provides that "[e]vidence otherwise admissible or subject to discovery outside of mediation . . . shall not be or become inadmissable or protected from disclosure solely by reason of its introduction or use in a mediation," and the section's interplay with Cal. Evid. Code § 1119:

Read together, sections 1119 and 1120 establish that a writing—which qualifies as " '[e]vidence' " (§ 140)—is not protected "solely by reason of its introduction or use in a mediation" (§ 1120, subd. (a)), but is protected only if it was "prepared for the purpose of, in the course of, or pursuant to, a mediation." (§ 1119, subd. (b).)  In other words, under section 1120, a party cannot secure protection for a writing—including . . . an analysis of a test sample—that was not "prepared for the purpose of, in the course of, or pursuant to, a mediation" (§ 1119, subd. (b)) simply by using or introducing it in a mediation or even including it as part of a writing—such as a brief or a declaration or a consultant's report—that was "prepared for the purpose of, in the course of, or pursuant to, a mediation."  [T]his construction does not render section 1120 "surplusage" or permit parties "to use mediation as a shield to hide evidence."  Rather, consistent with the Legislature's intent, it applies section 1120 as a "limit[ ]" on "the scope of [s]ection 1119" that "prevent[s] parties from using a mediation as a pretext to shield materials from disclosure."

Rojas, 33 Cal.4th at 417-18.  Therefore, Cal. Evid. Code § 1120 limits the scope of § 1119, thereby preventing litigants from using mediation as a pretext to shield materials from disclosure.  See id. at 417-18, 423 n.8.[4]

In this case, at this Court's September 20, 2013, hearing[5] Defendant's counsel stated the following:

[W]e can query the database and produce a searchable, sortable file with the data . . . .  If [Plaintiffs] just tell us what transactions they are interested in or what specific types of transactions for a date . . . for a period of time.  It's a

_____

[4] The Supreme Court of California stated the following:

Of course, that witness statements "prepared for the purpose of, in the course of, or pursuant to, a mediation" are protected from discovery under section 1119 does not mean that the facts set forth in those statements are so protected.  Under section 1120, subdivision (a), because facts known to percipient witnesses constitute "[e]vidence otherwise admissible or subject to discovery outside of a mediation," those facts do not "become inadmissible or protected from disclosure solely by reason of [their] introduction or use in a mediation" through witness statements prepared for the purpose of, in the course of, or pursuant to, the mediation.  Otherwise, contrary to the Legislature's intent, parties could use mediation "as a pretext to shield materials from disclosure." (Cal. Law Revision Com. com., 29B pt. 3 West's Ann. Evid.Code, supra, foll. § 1120, p. 153.)

Rojas, 33 Cal. 4th at 423 n.8.

[5] On September 20, 2013, the Court held a hearing in the overlapping case, Kogok et al. v. T-Mobile USA et al., 13cv838-BEN (BLM) ("Kogok"), regarding Plaintiffs' motion to compel production of the Electronically Stored Information ("ESI") contained on T-Mobile's computerized system for calculating commissions for the putative class.  See Kogok, ECF No. 36.  The Court denied the motion to compel and refused to permit Plaintiffs to inspect or copy Defendant's entire electronic database.  Kogok, ECF No. 37 at 10, 31.  The Court further stated that Plaintiffs would have to rely on T-Mobile to produce ESI records and directed Plaintiffs to tailor their discovery requests to identify categories of systemic-type errors.  Id. at 30-31.

> SQL system, and you can do queries of SQL, and . . . run queries to extract
> data as long as they have specific parameters.

Kogok, ECF No. 37 at 15.  After the hearing, Plaintiffs propounded discovery aimed at identifying "systemic errors" and seeking the data that Defendant produced.[6]  ECF No. 29 at 6; Menhennet Decl. at 3.  Accordingly, the challenged data existed before the parties engaged in mediation discussions in October 2013, Defendant represented to the Court that it could produce the data pursuant to Plaintiffs' discovery requests, and Plaintiffs served such requests on Defendant before the mediation discussions began.  Moreover, as pointed out by Plaintiffs, the produced data was not marked "for mediation purposes only" at the time of production.  Markham Decl. at 4.

Further, although Defendant's Application Support Analyst created queries for various categories of data sought by Plaintiffs in order to extract relevant data from T-Mobile's internal computer systems where it was stored, and formatted and exported the data into excel spreadsheets, the analysis, calculations and compilations of the data was done by Plaintiffs' consultant.  See Beharry Decl. at 2; Markham Decl. at 4-5.  Therefore, the facts of this case are distinguishable from Rojas, where the challenged data included "reports describing the existence or amount of mold spores in a sample" prepared by the party asserting the mediation privilege.  See Rojas, 33 Cal.4th at 422-23.  The Court thus agrees with Plaintiffs that the data produced by Defendant after January 14, 2014, is raw data, which does not contain impressions, opinions or analysis that would categorize the information as "compiled" or "prepared" for mediation.  See ECF No. 29 at 15.  The data was

---

[6] Plaintiffs assert the following:

[A]fter the Court's September 20, 2013 ruling requesting that Plaintiffs narrow their discovery requests in the related *Kogok* matter, both the *Kogok* plaintiffs and the *Gonzales* plaintiffs propounded additional written discovery requests, in conformity with the Court's directive that plaintiffs narrow their discovery requests to find more systemic-type errors. Plaintiff propounded formal discovery requests in October [2013], which were narrower than requests for the entire ASC database.

ECF No. 29 at 6; Menhennet Decl. at 3; see also Kogok, ECF No. 37.  Plaintiffs further claim that "[t]hose discovery requests, in total, would have covered the data T-Mobile has produced thus far, and has agreed to continue to produce."  Menhennet Decl. at 3.

prepared for Defendant's business use before the contemplated mediation, and therefore, is "evidence otherwise admissible or subject to discovery outside mediation." See Cal. Evid. Code § 1120; see also § 1119.

### 2. Alleged Discovery Stay

Defendant claims that in December 2013 and January 2014, the parties entered into an agreement to stay general discovery (or written discovery) and to focus on discovery required for mediation. See ECF No. 28-2, Plevin Decl. at 2; ECF Nos. 28-1 at 2-3; 32 at 5-6, 8. Plaintiffs assert that while their discovery requests were pending, the parties jointly agreed in December 2013, "that staying the formal discovery requests made sense, while they pursued smaller, narrower data request . . . ." ECF No. 29 at 6; see also Menhennet Decl. at 3. As noted by the Court in its original order, this contention is not supported by the facts:

> The Court initially notes that it did not stay discovery to permit the parties to focus on mediation. Rather, the Court issued a case management order on July 1, 2013, requiring the parties to conduct discovery and for Plaintiffs to file their class certification motion by January 31, 2014. ECF No. 9. In their first request to continue dates, the parties stated, among other reasons, that Plaintiffs needed additional time to conduct discovery. ECF No. 16. The parties acknowledged that the instant case was "largely duplicative of Kogok" and that
>
> > there was a dispute between the parties in Kogok as to the scope of permissible ESI discovery. The Court resolved this on September 20, 2013, by ordering plaintiffs to identify categories of systematic errors of transactions so that defense IT discovery could be limited to those categories.
> >
> > The parties in both cases have jointly pursued the Court's directives, and plaintiffs (in both cases) are identifying the "systematic" errors at this time, with the defense agreeing to produce data in databases relevant thereto. This process is expected to take approximately 75 to 90 days.
>
> Id. at 4. The Court relied on this language in granting the parties motion to continue dates. ECF No. 17.
>
> In their second motion to continue discovery and motion deadlines, filed on January 31, 2014, the parties reiterated that they were "identifying systematic errors at this time, with the defense agreeing to produce data in databases relevant thereto." ECF No. 21 at 4. Again, the Court relied on this language in granting the joint request. ECF No. 22.

1
2
3
4

   In their third motion, filed on May 29, 2014, the parties stated "[o]n January 14, 2014, Plaintiffs requested that T-Mobile produce data related to 14 different types of product codes, pursuant to the Court's direction at the September 20, 2013 hearing regarding discovery." ECF No. 23 at 3. The parties acknowledged that the discovery was "complicated" and required "collection and review of the data" from "multiple databases" and that "personnel [was] required to compile the requested data." Id.

5
6
7
8
9
10
11
12

   Based upon the parties' contemporaneous statements to the Court in their motions to continue dates, the Court finds that the produced computer data at issue in this motion, including the required compilation, was compiled and produced pursuant to case discovery, based at least in part on the Court's September 2013 discovery order. While the parties may have agreed to narrow the scope of the discovery in order to facilitate their preparation for mediation, the computer data was compiled and produced pursuant to this Court's discovery order, and not solely for a pending mediation. The fact that the computer data was going to be used in mediation does not transform it into data that is protected by the mediation privilege. The evidence presented to this Court establishes that the parties were engaging in relevant discovery and that they agreed to limit the scope of the relevant discovery to facilitate mediation efforts, but that the discovery was not compiled and produced solely for mediation. Accordingly, the Court finds that the computer data at issue in Defendant's motion is not protected by the mediation privilege.

13  ECF No. 33 at 2-4.  The Court reaffirms its original finding [see id. at 4] that the disputed

14  computer data is not protected by the mediation privilege and **DENIES** Defendant's motion

15  for a protective order.  See Seattle Times Co., 467 U.S. at 36.  Because the challenged data

16  is not protected by the mediation privilege, Plaintiffs can use it for class certification

17  purposes.

18                                   <u>**SUMMARY AND CONCLUSION**</u>

19        For the reasons set forth above, as well as in this Court's July 3, 2014 order, the Court

20  **DENIES** Defendant's motion for a protective order.

21        **IT IS SO ORDERED.**

22

23  DATED:  August 14, 2014

24

25                                    BARBARA L. MAJOR
26                                    United States Magistrate Judge

27

28